**Patrick Henry GRAY, et al., Appellants–Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Appellee– Defendant,**

**David Brian GRIFFIN, et al., Appellants–Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Appellee– Defendant.**

No. 07A04–9210–CV–379.

Court of Appeals of Indiana, Fourth District.

Nov. 24, 1993.

Rehearing Denied Feb. 4, 1994.

David S. McCrea, Bloomington, for appellants-plaintiffs.

Roseann Oliver, Suzanne M. Metzel, Pope & John, Ltd., Chicago, IL, Raymond W. Gray, Nashville, for appellee-defendant.

CHEZEM, Judge.

## Case Summary

Patrick Gray et al. ("Gray") and David Griffin et al. ("Griffin") appeal the trial court's decision to grant Westinghouse Electric Company's ("Westinghouse") motions to dismiss their consolidated nuisance and punitive damages claims under Ind.Trial Rule 12(B)(6). Gray also appeals the trial court's dismissal of his complaint pursuant to Ind.Trial Rule 41(E). We reverse the dismissals under T.R. 12(B)(6) and affirm the dismissal under T.R. 41(E).

## Issues

Gray and Griffin present the following issues for review:

1. Did the trial court properly dismiss both nuisance complaints pursuant to Ind.Trial Rule 12(B)(6)?

2. Did the trial court properly dismiss both punitive damages claims pursuant to Ind.Trial Rule 12(B)(6)?

3. Did the trial court properly dismiss Gray's complaint pursuant to Ind.Trial Rule 41(E)?

## Facts and Procedural History

Gray and Griffin individually filed their

original nuisance[1] and punitive damages complaints on April 18, 1985, which were consolidated on September 6, 1985. The trial court granted Gray and Griffin leave to amend their complaints on November 23, 1987. On December 17, 1989, Westinghouse filed *motions for summary judgment* as to allegations of concealment against both claims, which the court granted on June 4, 1991. The trial court also ordered both Gray and Griffin to file amended complaints or contentions within 30 days. The court also ordered both plaintiffs to "extend a good-faith offer of settlement to the [d]efendant on or before September 1, 1991."

On July 8, 1991, Griffin filed amended contentions, but Gray failed to file an amended contention until the day of the dismissal hearing, June 19, 1992. Neither plaintiff made a good-faith offer of settlement to Westinghouse. On August 30, 1991, Westinghouse filed a motion to dismiss both Gray's and Griffin's complaints pursuant to Ind.Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted and it also filed a motion to dismiss Gray's complaint pursuant to Ind.Trial Rule 41(E) for failure to prosecute. The trial court granted all of Westinghouse's motions on June 26, 1992.

### Discussion and Decision

Although both Gray and Griffin appeal the dismissal of their claims pursuant to T.R. 12(B)(6), the dismissal of Gray's complaint under T.R. 41(E) is dispositive as to Gray's claim. Therefore, we will only discuss the dismissal of the nuisance and punitive damages complaint under T.R. 12(B)(6) as it relates to Griffin. Gray and Griffin raise several questions which before now have not been addressed by Indiana courts.

### I. Sufficiency of Griffin's Nuisance Claim

■ A motion to dismiss under T.R. 12(B)(6) is made to test the legal sufficiency of the claim, not the supporting facts. *Indiana Carpenters Pension Fund v. Seaboard* (1992), Ind.App., 601 N.E.2d 352,

354, *reh'g denied, trans. denied.* On review, we determine whether the complaint states any allegation upon which relief could be granted. *Id.* A complaint can not be dismissed under T.R. 12(B)(6) unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092. Further, a complaint need not state all elements of a cause of action. *Indiana Carpenters,* 601 N.E.2d at 354. We must take the facts alleged in the complaint as true and determine whether, in a light most favorable to the plaintiff, the complaint is sufficient to constitute a valid claim. *Id.; Sheridan v. Town of Merrillville* (1981), Ind.App., 428 N.E.2d 268, 270.

Griffin and his family have lived on property adjacent to the Lemon Lane Dump ("dump") in Bloomington, Indiana, for varying lengths of time, beginning in 1961. Griffin's contentions state, in part, that Westinghouse contracted with one or more independent contractors to dispose of polychlorinated biphenyls ("PCBs") and other toxic chemicals at the dump from 1957 to 1962. Griffin also alleges that Westinghouse knew that the PCBs and other chemicals were toxic and poisonous and that there was a probability that damage to Griffin and his property would result. Further, Griffin alleges that in 1976, Westinghouse failed to abate the nuisance upon learning widespread PCB contamination had occurred. Griffin alleges his property is unmarketable and his health is at risk as a result of this nuisance. Griffin seeks compensation for property damage and medical monitoring to diagnose health problems caused by latent disease processes.

■ Westinghouse argues that Griffin fails to state a claim upon which relief can be granted because Westinghouse can not be held liable for any alleged nuisance at the dump. In support of this contention, Westinghouse claims that a defendant in a nuisance action must own or control the property on which the nuisance is located. Because the City of Bloomington, and not

---

1. Ind.Code § 34–1–52–1.

Westinghouse, owns the dump which houses the alleged nuisance, Westinghouse claims it can not be held liable for any damage caused by the nuisance. There is no authority in Indiana which supports this contention.

■ Although most nuisance cases refer to the controversy as being between two landowners, it is because this is the norm[2], not because the law requires either party to be a landowner.[3] The nuisance statute, unchanged since 1881, defines a nuisance as follows:

> Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance and the subject of an action.

The statute focuses on an individual's right to enjoy property free from interference, without making a distinction as to the ownership, license or tenancy status of either party. Further, the statute uses the broad term "whatever" to define the possible sources of a nuisance and it does not contain any reference to property ownership by the party creating the nuisance. This indicates the focus of the legislature was on protecting an individual's right to enjoy property from infringement by any source. *Accord Armory Park Neighborhood Association v. Episcopal Community Services in Arizona*, 148 Ariz. 1, 712 P.2d 914 (1985); *see also* 66 C.J.S. *Nuisance* § 83. We hold that the party which causes a nuisance can be held liable, regardless of whether the party owns or possesses the property on which the nuisance originates.

■ Griffin alleges that Westinghouse failed to abate the nuisance after learning about the PCB contamination at the dump. Westinghouse, however, argues that it can not be held liable because it has no duty to abate an alleged nuisance on property which it does not own or control. It follows from our holding above that the creator of a nuisance can also be required to abate the nuisance regardless of who owns the land. *See Scott Construction Co. v. Cobb* (1928), 86 Ind.App. 699, 159 N.E. 763, 766. However, whether the nuisance is abatable at all is a question of fact. Ind.Code § 34–1–52–3 provides "[w]here proper case is made, the nuisance may be enjoined or abated, and damages recovered therefor." A plaintiff may still recover damages for nuisance which is found to be unabatable. *Penn Central Transportation Co. v. Wilson* (1973), 155 Ind.App. 328, 292 N.E.2d 827; *Cox v. Schlachter* (1970), 147 Ind.App. 530, 262 N.E.2d 550, 554. We hold that the creator of a nuisance on land which it does not own can be required to abate the nuisance.

■ Westinghouse also contends that it can not be held liable because its use of the dump was reasonable. This argument is not relevant to our inquiry. The reasonableness of property use is a possible defense to a nuisance action. *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind.App., 495 N.E.2d 815, 818. Therefore, reasonableness of use is a question of fact and not relevant to our inquiry about the sufficiency of Griffin's claim.

■ Next, apparently citing the general rule that a contractee is not liable for the torts of an independent contractor, Westinghouse claims that it can not be liable for the alleged nuisance which resulted because an independent contractor, and not Westinghouse itself, took PCBs to the dump. The rule is based upon the lack of control a contractee has over the independent contractor, thereby making the contractee unable to prevent damage which might occur while the independent contractor carries out its contractual duties. *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316, 320–21. However,

---

**2.** This court has previously addressed one nuisance case in which the party responsible for the nuisance was not the landowner. *Joseph Schlitz Brewing Co. v. Sheil* (1909), Ind.App., 45 Ind.App. 623, 88 N.E. 957.

**3.** A plaintiff must be a landowner only for the purpose of seeking damages for injury to real property. *See* I.C. § 34–1–52–2; *Pere Marquette R. Co. v. Chadwick* (1917), 65 Ind.App. 95, 115 N.E. 678.

control over the manner in which the independent contractor deposited the PCBs is not the issue here. Rather, Griffin's claim focuses on the fact that the PCBs were put in the dump at all, and that it was done at the direction of Westinghouse. Moreover, there are exceptions to the general rule that a contractee is not liable for an independent contractor's actions, including where the act for which the independent contractor was hired will create a nuisance. *Id.* 343 N.E.2d at 322; *Denneau v. Indiana & Michigan Electric Co.* (1971), 150 Ind.App. 615; 277 N.E.2d 8, 12. Therefore, we hold that a contractee can not escape liability for a nuisance it creates by hiring an independent contractor to do work which by its nature causes the nuisance. *See Id.*

■■■ Finally, Griffin argues that because his property is unmarketable and his health is at risk from PCB contamination, the issue of damages is sufficiently pled. Westinghouse maintains that Griffin's contentions are insufficient to entitle him to damages for medical monitoring or loss in the fair market value of his property. Whether Griffin is entitled to damages, and how much, is a question of fact. However, the nuisance statute does require a plaintiff to plead that the situation is injurious to health or offensive to senses or obstructive of free use of property, so as to interfere with comfortable enjoyment of life or property. But, actual physical damage to person or property need not be alleged. *Friendship Farms Camps, Inc. v. Parson* (1977), 172 Ind.App. 73, 359 N.E.2d 280, 282 (physical illness need not be shown); *Muehlman v. Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591, 593 (damage to property not required). Evidence of inconvenience, annoyance and discomfort can all be grounds for recovery of damages in a nuisance action. *E.g., Id.; Cox,* 262 N.E.2d 550; *Keane v. Pachter* (1992), Ind.App., 598 N.E.2d 1067. Additionally, a plaintiff's fear for his safety or that of his property is sufficient to constitute a nuisance if the evidence shows that fear was reasonably justified. *Hays v. Hartfield L–P Gas* (1974), 159 Ind.App. 297, 306 N.E.2d 373, 376.

■■■ Generally, when determining what constitutes a nuisance, the question is whether it is reasonable to believe that the situation would naturally produce physical discomfort to persons of ordinary sensibilities, tastes and habits. *Wendt v. Kerkhof,* (1992), Ind.App., 594 N.E.2d 795, 797. Taken as true, Griffin's allegations that his property is unmarketable and his health is at risk due to PCB contamination are sufficient to sustain a nuisance claim. We think it is reasonable to believe that a substantial financial loss, combined with whatever health risks and consternation Griffin may have suffered due to the possible contamination of his property with a carcinogen, would cause physical discomfort. Griffin's proof of these allegations will determine whether a nuisance in fact exists and the damages to which he is entitled. *Hays,* 306 N.E.2d at 376. We hold that Griffin has stated a claim upon which relief can be granted and, therefore, find that the trial court improperly dismissed Griffin's complaint and remand for action consistent with this opinion.

## II. Sufficiency of Griffin's Allegations for Punitive Damages

■■■ Westinghouse contends that Griffin fails to make a showing by clear and convincing evidence of "quasi-criminal" conduct, thereby necessitating the dismissal of Griffin's claim for punitive damages. Griffin argues that Westinghouse confuses the issues of the level of proof for punitive damages and the sufficiency of the allegations under T.R. 12(B)(6). The level of proof is a question for the trier of fact, whereas, the sufficiency of the allegations is the issue before us. We agree with the latter position.

■■■ Punitive damages are a jury question. *Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1225. Punitive damages may be awarded upon a showing of a "quasi-criminal" state of mind or willful and wanton misconduct, which, under existing conditions, the actor knows will probably result in injury. *Id.; Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1023. Willful and wanton misconduct need not include malice or in-

tent to injure. *Id.* Further, conduct which is oppressive or amounts to gross negligence justifies punitive damages. *Adami–Saenger Partnership I v. Wood* (1991), Ind.App., 568 N.E.2d 1112, 1115.

Griffin's contentions state that Westinghouse consciously and knowingly dumped PCBs and other toxic chemicals and failed to abate a known nuisance, with knowledge of the danger to Griffin's health and property. Taking these allegations as true, Griffin adequately states a claim that survives a T.R. 12(B)(6) motion. We remand to the trial court to proceed with this case in a manner consistent with this opinion.

### III. Dismissal of Gray's Complaint under T.R. 41(E)

Gray argues that the trial court improperly dismissed his complaint for failure to prosecute under T.R. 41(E). He contends that, although he failed to comply with the court's orders to file an amended complaint or contentions within thirty (30) days and submit an offer of settlement by September 1, 1991, the consolidation with Griffin's complaint created a single dispute, thereby making his compliance unnecessary. Gray further argues that the trial court abused its discretion because his failure to comply did not prejudice Westinghouse. We are not convinced by, nor does the law support, this argument.

We will reverse a T.R. 41(E) ruling only where there is an abuse of discretion. *Gibbs v. Douglas M. Grimes P.C.* (1986), Ind.App., 489 N.E.2d 638, 641. Accordingly, we will affirm the trial court if any evidence supports the trial court's decision. *Id.* The trial court's authority to dismiss for failure to prosecute arises from its administrative discretion to conduct its business. *Id.* This authority is also found in T.R. 41(E), which allows dismissal where there has been a failure to comply with the Indiana Trial Rules or when no action has been taken in a civil case for 60 days. Trial Rule 41(E) also allows dismissal for violations of court orders. *Nichols v. Indiana State Highway Dep't* (1986), Ind. App., 491 N.E.2d 227, 228.

In the instant case, the evidence supports the trial court's decision in that Gray blatantly failed to comply with two of the court's orders. However, it is proper for the trial court and the reviewing court to consider all of the circumstances surrounding the dismissal. *Farinelli v. Campagna* (1975), 166 Ind.App. 587, 338 N.E.2d 299, 304. Although Gray's and Griffin's complaints were substantially the same, absent both plaintiffs filing contentions, the trial court and Westinghouse had no way of knowing if the parties' specific contentions would also be similar. Therefore, compliance with the trial court's order was an important part of the pretrial process, not just a formality. *See Id.* We are unconvinced by Gray's argument. We hold that whether or not Westinghouse was prejudiced by Gray's failure to comply is not the controlling factor for the trial court or reviewing court. Rather, the circumstances as a whole must be considered. *Id.*

However, we must also consider the question of the effect, if any, the consolidation of claims has on a T.R. 41(E) ruling. Gray and Griffin made almost identical allegations against Westinghouse and their claims were consolidated to promote justice and judicial economy. *See Id.* 338 N.E.2d at 300. This consolidation, however, did not have the effect of merging the two claims into one, relieving Gray of the duty to abide by the court's orders. Rather, consolidation of similar cases is permitted as a matter of convenience and economy, but, it does not merge the suits into a single cause or change the rights or duties of the parties. *Estate of Lidbury v. C.I.R.*, 800 F.2d 649 (7th Cir.1986); *Kraft, Inc. v. Local Union 327, Teamsters, Chauffeurs, Helpers and Taxicab Drivers*, 683 F.2d 131 (6th Cir.1982). Therefore, we hold that the trial court did not abuse its discretion by dismissing Gray's complaint.

Affirmed in part, reversed and remanded in part.

SHARPNACK, C.J., and CONOVER, J., concurring.