**James M. KEANE, Appellant–Plaintiff,**

**v.**

**Louis PACHTER and Ethel (Dolly) Pachter, Appellees–Defendants.**

**No. 37A03–9111–CV–00343.**

Court of Appeals of Indiana, Third District.

Sept. 8, 1992.

Rehearing Denied Oct. 19, 1992.

Barbara M. Shaver, Munster, for appellant-plaintiff.

Randall J. Nye, Beckman, Kelly & Smith, Hammond, for appellees-defendants.

HOFFMAN, Judge.

Appellant-plaintiff James M. Keane brings this appeal of the trial court's decision failing to award him attorney fees in his nuisance action against the appellees-defendants, the Pachters. The Pachters bring a cross-appeal raising four allegations of error.

The evidence relevant to the appeal discloses that in 1974, Keane purchased a condominium in the Harrison Heights complex in Munster, Indiana. Also in 1974 while the complex was under construction, the Pachters purchased two units which were converted into one large condominium. A portion of the converted unit owned by the Pachters was located directly above Keane's condominium.

With the approval of the builders, the Pachters forewent carpeting in several areas of the unit and instead installed marble tile floors in those areas. The tiled areas were located largely over Keane's unit. The marble tiles were installed without soundproofing material between the cement floor and the tiles.

Keane is a university professor who works irregular hours. Between 1974 and 1979, Keane inhabited his unit only sparingly because of his work hours and because he was usually in the company of his fiance. The Pachters, who were semi-retired, traveled for several weeks at a time during the early years of their ownership. Later, the Pachters lived away from their unit for approximately six months during the year.

In 1979, Keane and his fiance terminated their relationship, and Keane significantly increased the amount of time he spent at his unit. Also, Keane moved his bedroom from the back of his unit to a middle room. The middle room was located entirely beneath the Pachters' marble tile floor. Keane became intensely aware of noise emanating from the Pachters' unit. The noise was not confined to cupboards closing, telephones ringing or the murmur of voices which Keane expected to hear while living in a multi-family dwelling. Keane was variously awakened or unable to sleep due to noises which he described in onomatopoetic terms such as: clicking, clacking, clapping, tapping, scraping, rumbling, and thumping. Keane described other noises as sounding similar to barrels rolling, someone dropping lead buckshot, furniture-moving, wheels rolling, heavy objects hitting the floor, and all manner of walking noises from both soft and hard heels.

Keane attempted to resolve the matter by meeting with Louis Pachter in 1979. At one point during the meeting, Pachter identified a noise heard in Keane's unit as the movement of the television cart in the Pachter unit. Pachter terminated the discussion by suggesting that if Keane did not like the noise he could move.

Between late 1979 after the meeting with Pachter and 1985 when Keane filed the nuisance suit, Keane wrote to the Harrison Heights Board of Directors to request action under the covenants contained within the Declaration of Condominium Ownership. In February 1984, the Board notified the Pachters that they were required to carpet the marble tiled areas of their unit. Subsequently in December 1984, the Board determined that the original oral consent by the builders conformed with the provisions of the declaration. The Board found that no further action should be taken regarding Keane's complaints.

Keane made an attempt to sell his unit. After Keane told the prospective purchasers about the noise, they did not return. At the time of trial, Keane was unsure whether the condominium was saleable.

James Yerges, an acoustical engineer, conducted a standard noise level test upon the Pachters' floor. The test was based upon a scale developed by the Federal

Housing Administration (FHA), applicable to federally funded or managed multi-family dwellings. The unit of measurement within the test is termed an Impact Isolation Class. In a structure of the type at Harrison Heights, the minimum IIC rating would be 55. The Pachters' marble tile floors tested at less than IIC 31. Yerges tested a portion of the marble floors which were covered by a rug that was 3/8 inch thick. The floor with the rug tested at IIC 77. It was Yerges' opinion that a dense reconstituted urethane pad covered by dense carpet installed over the marble would result in an acceptable noise level. Also, Yerges noted the impracticality of altering Keane's ceiling. In order to lower the noise to an acceptable level, 16 inches of sound barrier material would be required. Keane's ceiling measures less than eight feet in its unaltered state.

Prior to trial, a summary judgment hearing resulted in a decision that Keane could not recover on a contract theory. The trial court determined that the statute of limitations would bar contract claims.

After trial, the court rendered findings of fact and conclusions of law with its judgment. In pertinent part, the judgment is:

### "CONCLUSIONS OF LAW

1. The intermittent noise emanating from the Pachters' unit has been injurious to [Keane's] emotional health, offensive to his sense of hearing, and an effective obstruction to the unfettered use of his unit, together thus essentially to interfere with the comfortable enjoyment of his life and property, and so comprises a continuing nuisance under I.C. 34–1–52–1.

2. The nuisance created and maintained by the Pachters should be abated by mandatory injunction.

3. The nuisance created and maintained by the Pachters is the proximate cause of [Keane's] damages.

4. Keane is not entitled to attorney's fees since he has no claim under the Declaration.

### JUDGMENT

IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that:

1. The [Pachters] shall install good dense carpeting on good dense reconstituted urethane padding on their hard surface, marble flooring in their consolidated units at Harrison Heights, above and coextensive with the Keane unit located immediately beneath them, on or before June 24, 1991, and shall submit evidence to this court on or before that date of their good faith compliance herewith.

2. The plaintiff shall have and recover from Louis Pachter and Ethel J. (Dolly) Pachter the sum of $5,000.00...."

On appeal, Keane asserts that the court erred in determining that he was not entitled to attorney's fees. On cross-appeal, the Pachters present four issues, which as restated are:

(1) whether Keane's nuisance claim was barred by the statute of limitations;

(2) whether the Board's determination that the Pachters installed the marble floors with the Board's consent was determinative;

(3) whether the trial court erred in awarding Keane damages which were based upon an incorrect measure of damages and were unsupported by the evidence; and

(4) whether the Pachters are entitled to attorney's fees.

First, Keane attacks the court's entry of summary judgment as to his contract claims as they relate to his request for attorney's fees. A court on appeal will affirm the grant of summary judgment on any legal basis supported by the record, and this standard of review is unchanged by the entry of specific findings and conclusions of law. Ind. Trial Rule 52 regarding specific findings and conclusions governs cases, or portions thereof, which proceed to trial, not those disposed of in summary proceedings. See *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (1992);

*see also P.M.S., Inc. v. Jakubowski* (1992), Ind.App., 585 N.E.2d 1380, 1381 n. 1. In short, even where specific findings and conclusions have been entered, the reviewing court must determine that no genuine issues of material fact remained prior to entry of summary judgment. *P.M.S., supra.*

Keane argues that he should have been awarded attorney's fees at the trial court level based upon provisions within the Declaration of Condominium Ownership of Harrison Heights Condominiums which purports to allow attorney's fees to a prevailing party in "any proceeding arising because of an alleged default by an apartment owner...." Also, Keane contends that implicitly he alleged claims under the declaration and under the "Horizontal Property Act," IND.CODE § 32-1-6-1 *et seq.* regarding condominiums, which also contains provisions for awarding attorney's fees.

■ In order to preclude the entry of summary judgment, the nonmoving party may not contend that factual issues concerning the theory of recovery existed but were not raised in the pleadings. *Funk v. Funk* (1990), Ind.App., 563 N.E.2d 127, 131. Keane did not raise any question regarding the applicability of the Horizontal Property Act in his pleadings or orally at the hearing on summary judgment. Keane cannot inject new theories of recovery at the appellate stage of the proceedings.

Although Keane attached a copy of the declaration to his complaint and mentioned the declaration during the hearing on summary judgment, he failed to present any evidence at the hearing with regard to a statute of limitations for the declaration issues in excess of that for most contract claims. On summary judgment, the trial court ruled that the contract claims were barred by the statute of limitations. On appeal, Keane argues that the proper statute of limitations for such covenants is 20 years. Keane relies upon a 1904 case. The more recent statute which appears to control, IND.CODE § 34-1-2-2(6) (1982

Ed.), also provides for a 20-year statute of limitations.

■ If the trial court erred in applying the shorter contract statute of limitations to the declaration, the error was harmless inasmuch as, at trial during a colloquy between the trial judge and counsel for the parties, the judge acknowledged that an issue concerning the covenants could still be viable at trial. Also, when offered by Keane during the trial, the declaration was admitted into evidence. *Cf. Jackson v. Farmers State Bank* (1985), Ind.App., 481 N.E.2d 395, 402-403 (error in prematurely granting summary judgment on issue rendered harmless where court allowed issues to be presented at trial).

■ At trial, Keane introduced the declaration into evidence and received a clarification from the court as to the viability of the declaration issue all as noted above; however, Keane failed to introduce any evidence on the issue. Thus, the trial court did not err in determining that Keane was not entitled to recover on a claim under the declaration and was not entitled to attorney's fees.

Turning to the issues presented by the Pachters, because the trial court entered findings of fact and conclusions of law pursuant to a written request by the parties, review is limited to a determination whether the findings and conclusions are clearly erroneous, *i.e.,* without facts or inferences within the record to support them. *National Advertising v. Wilson Auto Parts* (1991), Ind.App., 569 N.E.2d 997, 1000; *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 566. The court's judgment will not be reversed unless it is clearly against the logic and effect of the facts or reasonable and probable deductions to be drawn therefrom. *National Advertising, supra,* 569 N.E.2d at 1000. The appellate court reviews the specific findings to determine whether they are supported by the evidence and then whether the findings support the judgment.

*Perez v. Gilbert* (1992), Ind.App., 586 N.E.2d 921, 924.

 The Pachters contend that Keane's nuisance claim was barred by the statute of limitations. The applicable statute of limitations for an action for an abatement of a nuisance or for damages arising therefrom is six years. *See Dolph v. Mangus* (1980), Ind.App., 400 N.E.2d 189, 190; IND. CODE § 34–1–2–1 (1982); *Lucas et al. v. Marine* (1872), 40 Ind. 289, 293–294; *The Ohio and Mississippi Railway Company v. Simon* (1872), 40 Ind. 278, 285–286. Also of consideration is the distinction between an injury caused by a nuisance which is "permanent" or "original" and a nuisance which is termed "temporary," "transient," "continuing," or "recurring." *Dolph, supra,* 400 N.E.2d at 191.

In *Dolph*, a case regarding waters overflowing the land of another, this Court noted the nexus between the statute of limitations and the type of injury:

"Thus, if the claim is of the permanent variety, the action must be commenced within the statutory period or it is barred. On the other hand, if the injury is of the temporary variety each new injury starts the limitations statute running anew with the effect that at any given time the plaintiff can recover the actual damage incurred for the various temporary injuries which have occurred within the statutory period preceding the filing of the complaint.

\* \* \* \* \* \*

One additional observation may be made. Apart from its involvement with the statute of limitations, the underlying purpose in these distinctions is an effort to accurately assess the damages the plaintiff has suffered. Is the injury such that he should recover only for the damage experienced from a particular occurrence, or are the consequences sufficiently certain that a broader recovery should be permitted and required? In response to this concern it is reasonable that the courts have recognized that injuries of the 'recurring' variety when continued over a protracted period of time may, through the regularity of their recurrence and the nature of the damage caused, become 'permanent.' In such cases, the statute of limitations should commence to run upon the permanent injury when its permanence is discernable. [Citations and footnotes omitted.]"

*Id.* at 191. Here, the trial court specifically found that the injury due to the noise was of a recurring or intermittent nature. Further, the court noted that due to Keane's infrequent use of the condominium prior to 1979, Keane did not detect the noise problem during the first five years of occupancy. The Pachters' characterization of the injury as "permanent" as of 1974 when the floors were originally installed is unavailing. Under the circumstances including the Pachters' lengthy stays away from their unit throughout the period in question and Keane's use as noted above, the evidence and inferences support the finding that the injury is recurring. As such, Keane's complaint was not barred by the statute of limitations.

 Next, the Pachters complain that the trial court should have denied Keane's nuisance claim because the Harrison Heights Board of Directors determined that the marble floors were installed with the Board's consent. The Pachters refer to IND.CODE § 32–1–6–31 (1982 Ed.) which provides:

"(b) All agreements, decisions and determinations lawfully made by the association of co-owners in accordance with the voting percentages established in this chapter, declaration or bylaws, shall be deemed to be binding on all condominium unit owners."

Again, the Pachters' argument is unavailing. The trial court found that the Pachters received oral consent for the installation of the marble floors from the original Board. However, the consent is not determinative of the issue whether a nuisance was created. Keane's acoustical expert testified that when the floors were installed in 1974, the means were available to properly soundproof the floors rather than applying the marble tiles directly to the cement floor. The Board's consent did

not address the method of installation which was controlled entirely by the Pachters. Although the Pachters contend that the Board has the authority to allow alterations to the building which would affect the soundproofing, there is no indication in the record that the Board considered soundproofing or intended to authorize the installation of marble tile floors absent soundproofing. Thus, the trial court determined whether the marble floors, as installed, constituted a nuisance pursuant to IND.CODE § 34–1–52–1 (1982 Ed.).

The nuisance statute states:

"Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action."

IND.CODE § 34–1–52–1. Further, IND. CODE § 34–1–52–2 (1982 Ed.) provides that "[s]uch action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance."

The Pachters complain that the value of the marble floors will be lost if covered by carpet. The decision whether one's use of his property is a nuisance to his neighbors, requires the balancing of competing interests of the landowners, using a common sense approach. *Wendt v. Kerkhof* (1992), Ind.App., 594 N.E.2d 795. The trial court's findings demonstrate such an approach. The trial court weighed the Pachters' interests in the unfettered ability to decorate their unit balanced against Keane's interests in the comfortable enjoyment of his property.

■ Keane presented subjective and objective evidence of the Pachters' interference with the enjoyment of his residence. The noise emanating from the Pachters' unit prevented Keane from resting or sleeping and awakened him if he had been asleep. *Cf. Friendship Farms Camps et al. v. Parsons et al.* (1977), 172 Ind.App. 73, 77, 359 N.E.2d 280, 283 (noise may constitute nuisance if unreasonable in degree; noise which interfered with sleep,

relaxation and prevented entertaining amounted to nuisance). The evidence supports the trial court's findings that a nuisance existed and that the oral consent of the Board prior to installation of the marble floors did not foreclose a nuisance claim.

The Pachters next contend that the trial court based the damages award upon an incorrect measure of damages and that the damages are unsupported by the record. IND.CODE § 34–1–52–3 provides, "[w]here a proper case is made, the nuisance may be enjoined or abated, and damages recovered therefor." The Pachters contend that, even if an injunction is proper, the damages award of $5,000.00 is impermissible.

In *Friendship, supra,* this Court stated: "The proper measure of damages in cases of this posture, where the nuisance is found to be abatable, is the injury to the use of the property determined by the depreciation in the fair market rental value during the time the nuisance existed."

*Id.* 172 Ind.App. at 79, 359 N.E.2d at 284.

■ Contrary to the Pachters' assertion, the trial court made a finding as to the decreased rental value of the unit caused by the noise. The trial court found:

"29. The testing by Yerges established the sounds created from walking and other activities in the Pachter units on the hard surface, marble floors would be so objectionable to persons living beneath them that if Keane's unit were a rental unit it would be unfit for that purpose."

This Court may not reverse an award of damages unless it is based upon insufficient evidence or is contrary to law. *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 275. The trial court's award of damages in the amount of $5,000.00 is fully supported by the record and the court's findings. The evidence and finding establish that the unit had no rental value while the noise condition existed. Undisputably, a condominium in a building termed a "luxury" building by the acoustical expert, would have a rental

value far in excess of $5,000.00 over the course of the period between 1979 and 1985. The Pachters have failed to present error.

██ Finally, the Pachters contend that they are entitled to both trial and appellate attorney's fees. The contention as to trial attorney's fees is predicated on the trial court's decision that Keane was not entitled to recover under the co-owner's declaration. The Pachters assert that they prevailed on the issue of whether Keane was entitled to recovery under the declaration. Thus, according to the Pachters, they are entitled to attorney's fees at the trial level. The Pachters do not present any authority for their proposition that recovery on less than all of the claims presented by a plaintiff entitles a defendant to attorney's fees as the prevailing party on that claim.

Further, as to both the trial and appellate attorney's fees, the Pachters contend that they are entitled to the fees based upon the declaration's provisions for attorney's fees for the prevailing party against those in "default" for "failure to comply with any of the Condominium documents." At both the trial level and at the appellate level, the Pachters have failed to bring themselves within the provisions of the declaration.

There being no finding of reversible error, the trial court's judgment is affirmed.

Affirmed.

GARRARD and BARTEAU, JJ., concur.